STATE of Missouri, Plaintiff–
Respondent,

v.

Brian GOUDEAU, Defendant–
Appellant.

No. 24275.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 27, 2002.

Irene Karns, Office of State Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Shaun Mackelprang, Asst. Atty. Gen., for Respondent.

### KENNETH W. SHRUM, Judge.

Brian Goudeau ("Defendant") appeals from a judgment entered after he was convicted by a jury and sentenced by the trial judge for robbery in the first degree in violation of § 569.020.[1] Defendant alleges the trial court committed reversible error in (1) responding to a jury question submitted during deliberations, (2) admitting certain evidence at trial of an uncharged crime, and (3) rejecting his claim that there was insufficient evidence to support his conviction. We disagree. We affirm.

Because Defendant challenges the sufficiency of the evidence, this court must accept as true all evidence and reasonable inferences tending to prove guilt and disregard all contrary evidence and inferences. *State v. Carroll,* 41 S.W.3d 878, 880[2] (Mo.banc 2001). In the early morning hours of October 18, 1999, Defendant went to a convenience store in Springfield, Missouri, and tried to sell a shirt to clerk Scott Bough ("Bough"). Bough refused to buy the shirt, and Defendant left the store, but returned at approximately 5:00 A.M. Shortly before Defendant's return, another employee, William Hill ("Hill"), arrived to begin his shift. Defendant asked Bough "if it was okay if he hung out for a few minutes to warm up." Bough answered affirmatively, and he went into the cooler to take inventory leaving Hill to work the cash register.

Thereon, Defendant approached Hill and asked him for some change from the register. Believing Defendant was "joking," Hill laughed at the request, but then Defendant's "tone of voice changed." This led Hill to ask Defendant if he (Defendant) was robbing him. Defendant said nothing, but pulled back his jacket and showed Hill a gun tucked into his pants. Hill then gave Defendant "all the bills" in the register. Shortly after that, Bough returned to the front of the store, and Hill told him that the store had just been robbed. Bough went outside and saw Defendant running north. The police were called, and Hill and Bough gave them Defendant's description from which a "composite photo" was produced. Also, both Hill and Bough positively identified Defendant from a photographic line-up as the robber of the store. Hill and Bough testified at trial there was no doubt that Defendant was the individual who robbed the store.

Police found Defendant approximately twelve hours later at a park located one block from the store. This encounter occurred after officers were dispatched to the park to investigate an individual possessing a gun therein. The individual turned out to be Defendant who admitted the gun found at the park was his. The weapon was found "buried in some mulch" near two trees and was subsequently identified as a pellet gun. While speaking to the officers, Defendant was handcuffed, "but he attempted to pull up his shirt and said that he had a gun and that it was in his pants, but he'd never pulled it out."

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

The pellet gun Defendant possessed at the park looked similar to the one used in the robbery. While at the park, the officers received information that Defendant was a suspect in the store robbery.

The officers who testified at trial did not reveal the reason Defendant was arrested at the park, i.e., for the robbery or for the gun possession. The gun was found, however, thirty to fifty feet away from Defendant, and Defendant did not admit the gun was his until after he was placed under arrest. Based on this evidence, the jury found Defendant guilty, and the trial judge sentenced him to twenty years' imprisonment as a prior and persistent offender. This appeal followed.

## POINT I: PLAIN ERROR IN RESPONDING TO JURY QUESTION?

Defendant's first point maintains the trial court erred in responding to a question asked by the jury during its deliberations. He argues that the judge's response was plain error because it "coerced a guilty verdict[.]" Defendant correctly recognizes this alleged error is unpreserved for appellate review, but asks this court to grant plain error relief.[2]

The jury retired for deliberations at 10:34 A.M., and approximately one hour later, it asked to see three exhibits and the testimony of one of the officers. The exhibits were sent to the jury, but the court instructed the jury to "rely upon your memory of the testimony." Approximately two and one-half hours later, the foreperson sent the following question to the court: "At what point or do I need to talk to the Judge concerning a strong division within the jury?" One hour later, the court gave the jury a pattern "hammer" instruction." [3] Defense counsel objected to the giving of the instruction, saying he thought the jury had "not been out long enough." Nearly an hour and one-half later, the jury sent the following question to the court: "At what time during this evening should we expect to come back tomorrow? We have some people that may need to call their employers." The court answered, "We do not plan for you to come back tomorrow. Please continue your deliberations. We'll be glad to order dinner for you." The court asked defense counsel if this response was appropriate, and he responded, "Fine, Judge." Twenty-five minutes later, the jury returned a verdict of guilty. Defendant complains this last response "had the effect of directing the jury to reach a verdict[,]" i.e., coerced a verdict. As stated above, Defendant asks this court for plain error review because he interposed no objection to the trial judge's actions. We decline Defendant's invitation.

■ Generally, "[a]n announcement of 'no objection' amounts to an affirmative waiver of appellate review of the issue." *State v. Markham*, 63 S.W.3d 701, 707[10] (Mo.App.2002). "Under those circum-

---

2. In pertinent part, Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

3. The "hammer" instruction is found at MAI CR3d 312.10 as follows:

"You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt."

stances, even plain error review is not warranted." *Id.* at 707–08[10].

This general rule not only attends when the issue is admissibility of evidence, but also when a court's conduct or ruling regarding a jury is challenged as erroneous. Thus, in *State v. Petary*, 781 S.W.2d 534 (Mo.banc 1989), the defendant argued the trial court plainly erred in its conduct of the jury selection process; specifically, the defendant contended the applicable statute had not been followed because the bailiff had excused a venireperson from the panel.[4] The *Petary* court rejected the argument by observing that "[a]ppellant expressly stated during voir dire that he had no objection to excuse of the venireman in question." *Id.* at 544[37].

In *State v. Hamilton*, 996 S.W.2d 758 (Mo.App.1999), this court held that a defendant, by failing to object to jurors selected and by affirmatively expressing satisfaction with the jury, waived any claim about the jury or the manner of its selection, even as to those claims of trial court error that were constitutionally based. *Id.* at 761[4]. *See also State v. Trainer*, 336 Mo. 620, 80 S.W.2d 131, 134[7] (1935) (holding defendant cannot complain on appeal about trial court allowing sequestered jury to attend a movie when defense counsel told the trial judge "they [defense] had no objection . . . if they [jury] attended in a body"); *State v. McVey*, 66 S.W.2d 857, 859[5] (Mo.1933) (holding defendant "estopped" to assert complaint that "the jurors were allowed to separate" where the record affirmatively showed this occurred "by agreement of all parties.")

In *State v. Stevens*, 949 S.W.2d 257 (Mo. App.1997), a jury asked the trial judge what minimum number of years the defen-

dant would serve on the jury's sentence. The judge told the parties how he wanted to answer the question and asked them to comment on his proposal. The prosecutor answered, "I think that's proper," and defense counsel stated, "I agree." *Id.* at 258. On appeal, we first noted that, in essence, defense counsel's answer was "he had no objection to the proposed response." *Id.* We then held that counsel's "no objection" response to the judge's proposed answer affirmatively waived appellate review of that issue, even under the plain error standard. *Id.* Quoting from *State v. Taylor*, 943 S.W.2d 675, 680[8] (Mo.App.1997), we explained as follows:

> " 'Because [defendant] did not preserve this issue for our review, we can review it, if at all, only as plain error under Rule 30.20. We decline plain error review. [Defendant] affirmatively waived our review of the issue when he indicated to the circuit court that he had no objection to the court's proposed response.' "

*Stevens*, 949 S.W.2d at 259.

Not only are these precepts established by case law, there is a statutory basis for holding that a defendant cannot affirmatively accept a judge's proposed action in the hope of a strategic advantage; then, turn 180 degrees and urge an appellate court to find the trial court plainly erred in doing that to which the defendant originally agreed. *See State v. Leisure*, 796 S.W.2d 875, 878–79 (Mo.banc 1990). Specifically, § 545.030.1(16) provides that no criminal "trial, *judgment,* or other proceeding [shall be] *in any manner affected* . . . for *any error committed at the instance . . . of the defendant.*" (Emphasis added.)

---

**4.** Vacated on other grounds *and remanded,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990), *reaffirmed* 790 S.W.2d 243 (Mo.

banc 1990); *cert. denied,* 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990).

Based on these authorities, we decline Defendant's request for plain error review of the trial court's response and handling of the jury's inquiry about "what time during this evening should we expect to come back tomorrow?" Because of Defendant's affirmative acceptance and agreement to what the trial court proposed, plain error review is not an option that we will consider. Point denied.[5]

### POINT II: PLAIN ERROR IN ADMISSION OF EVIDENCE?

■ Defendant's second point charges reversible error occurred when the trial court allowed the State to elicit evidence about Defendant's arrest in the park. He claims that the officers' testimony suggested Defendant committed a separate, uncharged crime, i.e., unlawful use of a weapon. As such, Defendant argues that evidence of a "separate crime or other bad act is inadmissible" because of its highly prejudicial nature. Defendant candidly admits the alleged error was not preserved at trial, nor in his motion for a new trial. Again, Defendant asks this court to review the alleged error under the plain error standard.

■ Even assuming *arguendo* that this evidence was inadmissible, Defendant has wholly failed to show manifest injustice or a miscarriage of justice resulted from its admission. First, *nowhere* in Defendant's argument is even a conclusory allegation that a manifest injustice or miscarriage of justice has resulted. To the contrary, Defendant repeatedly claims the admission of the evidence was "prejudicial." Here, Defendant bears the burden on appeal of showing plain error. *State v. Dowell*, 25 S.W.3d 594, 606[31] (Mo.App. 2000). Plain error and prejudicial error are not synonymous terms. *Hamilton*, 996 S.W.2d at 762[10]. Mere allegations of error and prejudice will not suffice for reversal under plain error review. *State v. Bewley*, 68 S.W.3d 613, 619[9] (Mo.App. 2002); *Dowell*, 25 S.W.3d at 606[31]. Defendant has failed to meet his burden.

■ Second, Defendant fails to explain why admission of this evidence was manifestly unjust. Defendant recognizes that the officers never mentioned the crime of "unlawful use of a weapon." The officers merely testified they were dispatched to the park on a report of a man with a gun therein. The gun turned out to be a pellet gun, and the officers *did not* state Defendant was arrested for this conduct. It was reasonable to infer Defendant was arrested for suspicion of robbery because the officers received this information, i.e., Defendant was a suspect in the robbery, after they arrived at the park, and Defendant only admitted to possessing the gun *after* he was under arrest. More than that, there is nothing in this record to suggest the jury would know that possessing a pellet gun, as Defendant did, could technically violate the unlawful use of a weapon statute.[6] "To violate the rule pro-

---

5. In so deciding, we have not ignored the cases cited by Defendant to support his position on appeal; specifically, *State v. Richardson*, 951 S.W.2d 718 (Mo.App.1997), *State v. Johnson*, 948 S.W.2d 161 (Mo.App.1997), *State v. Burns*, 808 S.W.2d 1 (Mo.App.1991), *State v. McNail*, 767 S.W.2d 84 (Mo.App. 1989), and *State v. Mason*, 588 S.W.2d 731 (Mo.App.1979). However, none of these cases involved a factual situation wherein the defendant affirmatively agreed to the trial court's challenged actions. Consequently, these cases are inapposite.

6. The statute is § 571.030.1(1) and provides that a "person commits the crime of unlawful use of weapons if he or she knowingly ... [c]arries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use...." A pellet gun can fit this description. *Skaggs v. State*, 920 S.W.2d 118, 119 (Mo.App. 1996).

hibiting evidence of other crimes or misconduct by the accused, the evidence must show the accused committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct." *State v. Ponder,* 950 S.W.2d 900, 911–12[14] (Mo.App.1997). Vague references cannot be characterized as clear evidence associating a defendant with other crimes. *State v. Bolds,* 11 S.W.3d 633, 638[8] (Mo.App.1999). We are not persuaded that this jury even considered that possession of a pellet gun in a park was a crime.

Finally, Defendant's point must fail because the evidence of his guilt was overwhelming. He was positively identified by Hill as the man who robbed him. He was positively identified by Bough as the man in the store immediately before the robbery, and as the man seen running north from the store immediately after the robbery. Defendant admitted to owning a pellet gun that looked similar to the gun used in the store robbery. As admitted by Defendant's appellate counsel, Defendant's "alibi [and only] witness was at best less than persuasive." Because the evidence of Defendant's guilt was overwhelming, no manifest injustice or miscarriage of justice has been shown that would entitle Defendant to relief under the plain error rule. *Dowell,* 25 S.W.3d at 606; *State v. Shaw,* 14 S.W.3d 77, 84 (Mo.App.1999). Point denied.

## POINT III: SUFFICIENCY OF THE EVIDENCE

■ Defendant's final point on appeal claims the evidence was insufficient to support a verdict because "the testimony of [Hill] and [Bough] so conflicted with their earlier statements and each other's testimony that it was not substantial and cannot support the verdict of guilty." When reviewing the sufficiency of the evidence, this court must accept as true all evidence and reasonable inferences tending to prove guilt and disregard all contrary evidence and inferences. *Carroll,* 41 S.W.3d at 880[2]. A reviewing court does not undertake to decide the credibility of witnesses, nor weigh the evidence. *Id.* at 882[5]. Our role is to decide whether there was substantial evidence from which a reasonable jury might have found Defendant guilty beyond a reasonable doubt. *State v. Silvey,* 894 S.W.2d 662, 673 (Mo.banc 1995). As such, we must keep in mind that it is within the jury's province to believe some, all, or none of any witness's testimony. *State v. Kuhlenberg,* 981 S.W.2d 617, 621 (Mo.App.1998).

The inconsistencies pointed out in Defendant's brief were for the jury to resolve. As indicated by the verdict, the jury resolved those adversely to Defendant. As stated above, there was overwhelming evidence from which a jury could find Defendant committed this crime beyond a reasonable doubt, and we will not again recount that evidence here. Suffice it to say, Hill's testimony standing alone was sufficient to support the verdict of the jury. "The testimony of one witness may be sufficient to sustain the conviction even if the testimony is inconsistent." *Id.* Apparently, Defendant is attempting to invoke the doctrine of "destructive testimony" or "destructive contradictions." However, that rule has no application to the case at bar.

■ "The infrequently encountered rule of 'destructive testimony' or, more aptly described, 'destructive contradictions', is the progeny of rampant inconsistencies and contradictions in the trial testimony of witnesses." *State v. Burns,* 671 S.W.2d 306, 311[8] (Mo.App.1984). It has been consistently held that the rule has *no application* when the inconsistencies are (1) between at-trial testimony and pre-trial statements, or (2) between the testimony

of one witness and another witness *at trial*. *See State v. Davison*, 46 S.W.3d 68, 79 (Mo.App.2001); *State v. Beckett*, 858 S.W.2d 856, 857 (Mo.App.1993); *Burns*, 671 S.W.2d at 311–12[8]. The rule provides that a *witness's testimony* loses probative value when his or her statements *at trial* are so inconsistent, contradictory, and diametrically opposed to one another that they rob the testimony of all probative force. *Davison*, 46 S.W.3d at 79[18]. This rule only applies, however, when inconsistencies are in a single witness's testimony at trial. Here, Defendant has· shown no such inconsistencies. This record does contain substantial evidence from which a reasonable jury could have found Defendant guilty beyond a reasonable doubt. *See Silvey*, 894 S.W.2d at 673. Point denied.

The judgment is affirmed.

PREWITT, P.J. and RAHMEYER, C.J., concur.