In the
 Missouri Court of Appeals
 Western District
STATE OF MISSOURI, )
 )
 Respondent, ) WD83417
 )
v. ) OPINION FILED: March 30, 2021
 )
MARTESE JAMON JOHNSON )
WINTERS, )
 )
 Appellant. )

 Appeal from the Circuit Court of Platte County, Missouri
 The Honorable James W. Van Amburg, Judge

 Before Division Four: Cynthia L. Martin, Chief Judge, Presiding, Thomas H. Newton,
 Judge and Mark D. Pfeiffer, Judge

 Martese Jamon Johnson Winters ("Winters") appeals from a judgment

convicting him of rape in the first degree, sodomy in the first degree, and sexual

exploitation of a minor. Winters argues that the trial court erred in imposing a sentence

of a total term of twenty years because the trial court did not have the authority to

increase the jury's total recommended sentence, and that the trial court abused its

discretion in imposing a sentence that increased the jury's recommendation. Finding no

error, we affirm.
 Factual and Procedural History

 Winters does not challenge the sufficiency of the evidence to support his

convictions of rape in the first degree, sodomy in the first degree, and sexual exploitation

of a minor. Viewed in the light most favorable to the verdict,1 the evidence established

that, in February 2018, Winters, nineteen years old, and H.Q. ("Victim"), sixteen years

old, were once in a relationship but that it had recently ended prior to February 26, 2018.

Winters continued to contact Victim through text messages, phone calls, and social

media. On February 26, 2018, Winters visited Victim's home and the two argued.

Winters left, but returned when Victim asked him to come back.

 Victim testified that when Winters returned, he had a gun, which he pulled out and

pressed against Victim's neck and face. Winters told her to get undressed and Victim did

so, because she was scared. Winters forced Victim to perform oral sex on him, and after

a few minutes, he started recording the assault on Victim's cellphone. Winters penetrated

Victim's vagina with his penis. She asked him to stop but he did not. At some point,

Winters dropped Victim's phone, but it continued to record the rape.

 The next day, Victim stayed home from school. Victim testified that she texted

Winters and asked him, "do you know I didn't want to do that?" and Winters responded

that Victim deserved it because she cheated on him. [Tr. 402] Victim showed her sister

the video of the rape, and her sister told their mother, who reported the rape to police.

 1
 We view the evidence in the light most favorable to the jury's verdict, disregarding all contrary evidence
and inferences. State v. Todd, 613 S.W.3d 92, 94 n.1 (Mo. App. W.D. 2020).

 2
 On March 1, 2018, Winters was arrested and later interviewed by detectives. He

told detectives that the gun was a fake gun. Detectives recovered the video of the rape

and text messages between Winters and Victim. The State charged Winters with one

count of rape in the first degree in violation of section 566.0302 ("Count I"); two counts

of armed criminal action in violation of section 571.015 ("Count II" and "Count IV"); one

count of sodomy in the first degree in violation of section 566.060 ("Count III"); and one

count of sexual exploitation of a minor in violation of section 573.023 ("Count V").

 After a three-day jury trial in October 2018, the jury returned its verdicts, finding

Winters guilty of Count I, rape in the first degree, Count III, sodomy in the first degree,

and Count V, sexual exploitation of a minor. The jury acquitted Winters of Counts II and

IV, the two counts of armed criminal action. The trial then proceeded to the penalty

phase.

 Winters did not waive jury sentencing. At the beginning of the penalty phase, the

trial court instructed the jury on the possible punishments for the three crimes. The jury

was instructed that rape in the first degree was punishable by not less than five years, but

up to life in prison; that sodomy in the first degree was punishable by not less than five

years, but up to life in prison; and that sexual exploitation of a minor was subject to a

minimum of five years in prison and a maximum of fifteen years in prison. In the State's

argument during the penalty phase, it requested that the jury sentence Winters to thirty-

five years on Count I, to thirty-five years on Count III, and to ten years on Count V.

 2
 All statutory references are to RSMo 2016, as supplemented through the date of the crimes, unless
otherwise indicated.

 3
Winters asked the jury to impose the minimum sentence on all three counts. Specifically,

Winters argued:

 The minimum sentences for all three of these counts is five years. I
 ask you to consider those minimum sentences. It's up to the court whether
 they are run concurrent or consecutive. They will probably be
 consecutive. If you give him the minimum sentence, he'll get a fifteen-year
 sentence, most likely.

[Tr. 563-64] (Emphasis added.)

 The jury proceeded to sentencing deliberations, during which it sent the trial court

eight questions. The final two questions were written on the same form, and they read:

 CAN THE JUDGE USE DISCRETION AND CHANGE THE
 RECOMMENDED SENTENCE THE JURY AGREES TO?

 CAN THE JURY RECOMMEND THE SENTENCES ARE
 CONSECUTIVE OR CONCURRENT?

[L.F. Doc. 6, p. 7] The trial court and the parties went on the record to discuss the

appropriate response, and the following exchange occurred:

 [Trial court]: The first one was, 'Can the Judge use discretion and change
 the recommended sentence the jury agrees to?' Response from counsel?

 [Counsel]:3 I guess theoretically the Court could -- is authorized to adjust it
 downward.

 [Trial court]: Exactly, and that would be it. If the Court is authorized to --
 the court cannot increase a sentence assessed by the jury but could decrease
 the sentence assessed by the jury.

 [The State]: And, likewise, go to the discretion of --

 [Trial court]: The discretion of whether it will run concurrent and
 consecutive?
 3
 The transcript does not indicate who responded to the trial court's request for response. However, the
exchange suggests that either the State or defense counsel responded to the request. Whether this response was
given by the State or defense counsel is immaterial to our discussion.

 4
[The State]: -- concurrent and consecutive.

[Trial court]: They can recommend whatever they want to recommend, I
assume.

[Discussion off record between counsel]

[Trial court]: What's that?

[The State]: Well, the thought, I think statutorily, Your Honor, [Counts I
and Counts III] will run consecutively, regardless.

[Trial court]: Okay.

[The State]: But I think that may be beyond their question and starts
advising them on the law, which probably is beyond the purview of --

[Trial court]: The question.

[The State]: -- the question, for sure. So, I'm not sure we're adjusting the
answer we discussed or --

[Trial court]: Well, they can recommend, I guess, whatever they wish to
recommend.

[The State]: Right.

[Defense counsel]: Right, but there is no spot for them, I think, on the
verdict forms --

[Trial court]: There is none.

[Defense counsel]: -- for consecutive or concurrent.

[Trial court]: There is not. So as to question number one, again, can the
Judge use discretion to change the recommended sentence the jury agrees
to? The response is going to be: The Court cannot increase the sentence but
has the authority to reduce the sentence. Correct?

[The State]: Correct.

[Defense counsel]: Yes.

 5
[Tr. 568-70] (Emphasis added.) The trial court's answer to the jury as to the first

question read, "THE COURT CANNOT INCREASE THE SENTENCE. THE

COURT MAY DECREASE THE SENTENCE, BUT THE COURT MUST STAY

WITHIN THE STATUTORY RANGE OF PUNISHMENT." [L.F. Doc. 6, p. 7]

The exchange continued, in reference to the jury's second question:

 [Trial court]: And as far as a recommendation as far as consecutive or
 concurrent, I guess I'll let them recommend whatever they wish to
 recommend, correct? I'll just leave it at that, that they can recommend
 whatever they wish to recommend and, again, I'll be statutorily bound by
 what I have the authority to do, correct?

 [The State]: Correct.

 [Defense counsel]: Correct.

 [Trial court]: But I'm not going to put that in the response.

 [Defense counsel]: Okay.

 [Trial court]: Again, the answer to question number one, the Court cannot
 increase the sentence. The Court may decrease the sentence but the Court
 must stay within the statutory range of punishment and on, two, the jury
 may recommend whether the sentences are consecutive or concurrent. That
 will be the response of the Court. Thank you.

[Tr. 570-71] (Emphasis added.) The trial court's answer to the jury's second question

read, "THE JURY MAY RECOMMEND WHETHER THE SENTENCES ARE

CONSECUTIVE OR CONCURRENT." [L.F. Doc. 6, p. 7]

 On October 9, 2019, the jury returned its sentencing verdicts to the trial court on

three separate verdict forms, each of which asked the jury to "assess and declare the

punishment" for each stated count. As to Count I, rape in the first degree, the jury

 6
assessed a punishment of "IMPRISONMENT FOR A TERM OF 10 YEARS[.]" [L.F.

Doc. 7, p. 6] As to Count III, sodomy in the first degree, the jury also assessed a

punishment of "IMPRISONMENT FOR A TERM OF 10 YEARS[.]" [Id. at 7] As to

Count V, sexual exploitation of a minor, the jury assessed a punishment of

"IMPRISONMENT FOR A TERM OF 5 YEARS[.]" [Id. at 8] The verdict forms did

not provide for a specific space where the jury could recommend whether the sentences

should run concurrent or consecutive. However, at the bottom of each verdict form, the

jury wrote, "THE JURY RECOMMENDS THE SENTENCES RUN CONCURRENTLY

WITH [THE OTHER TWO COUNTS]." [Id. at 6-8]

 On November 25, 2019, Winters filed a Motion for Judgment of Acquittal or in

the Alternative, for a New Trial ("Motion for New Trial"). It did not contain any of the

claims of error which comprise this appeal. On December 5, 2019, the parties convened

for Winters's sentencing hearing. Prior to sentencing, the trial court heard Winters's

previously filed Motion for New Trial and it was denied. As to sentencing, Winters

argued the following:

 Your Honor, [the jury] also asked a very interesting question, which
 I have never seen a court answer or allow them to answer but this Court
 did. They asked whether they could submit . . . whether they wanted it to
 be consecutive or concurrent time. This court allowed them to give their
 opinion and their opinion was for concurrent time, meaning numbers
 they gave for these convictions, they think that an appropriate sentence
 would be a ten-year sentence across the board.

 Although Counts [I and III]4, I believe, must be run consecutive,
 due to their nature and that they happened at the same time by statute, this

 4
 Winters mistakenly referred to these counts as Counts I and II. We point this out only for the sake of
clarity on appeal.

 7
 court could still follow through with the [jury's] hope and request for,
 essentially, a ten-year sentence. If you give Mr. Winters five years, on . . .
 Counts [I and III], you could run those consecutive for a ten-year sentence,
 and then give him the five years that the jury recommended on the sexual
 exploitation of a minor, and run that [ ] concurrent, that would still be a ten-
 year sentence for Mr. Winters.

[Tr. 589-90] (Emphasis added.) As to Counts I and III, the trial court sentenced Winters

to ten years in prison. The trial court ran these sentences consecutively, noting, "pursuant

to statute, those two prison terms are to run consecutively." [Tr. 595] The trial court

sentenced Winters to five years in prison on Count V, to run concurrently to Counts I and

III, for a total term of twenty years in prison. Winters appeals.

 Analysis

 Winters raises two points on appeal, both of which assert that because the trial

court "misinformed" the jury that it could recommend whether Winters's sentences run

consecutively or concurrently, while also informing the jury that the trial court did not

have the authority to increase the jury's recommended sentences (but could decrease

them), that the trial court then compounded its legal error by failing to reduce the ten-year

sentences on Counts I and III to five-year, consecutive sentences. Winters's first point on

appeal argues that this sentence reduction was the only method by which the trial court

could comply with section 557.036.5's requirement that Winters's sentence not exceed the

term declared by the jury, and with section 558.026.1's requirement that Counts I and III

run consecutively. Winters's second point on appeal alternatively argues that even if the

trial court had the statutory authority to impose a total sentence of twenty years, that it

nevertheless abused its discretion in imposing a sentence which "doubled the jury's

 8
recommended total term of imprisonment." [Appellant's Brief, p. 33] We address these

points together.

Points One and Two

 Winters's first point on appeal presents an issue of statutory interpretation

regarding the trial court's sentencing authority under section 557.036.5, which we would

normally review de novo. State v. Howard, 598 S.W.3d 146, 148 (Mo. App. W.D. 2020).

Winters's second point on appeal challenges the trial court's sentencing decision, which

we would normally review for abuse of discretion. State v. Savage, 609 S.W.3d 71, 87

(Mo. App. W.D. 2020). However, Winters recognizes that his claims of error may not

have been properly preserved for our review, subjecting them to, at best, plain error

review. State v. Campbell, 600 S.W.3d 780, 791 (Mo. App. W.D. 2020). Winters

requests that we exercise our discretion to review his statutory sentencing authority claim

for plain error, should we find that this first point on appeal was not properly preserved.

See State v. Severe, 307 S.W.3d 640, 642 (Mo. banc 2010) (citing Rule 30.20 5). Winters

has not sought plain error review of his second point on appeal which alternatively claims

that the trial court abused its discretion in imposing Winters's sentence. Because both

points on appeal are based on the same trial court action, we address the points

collectively to determine whether they are preserved for our review.

 Winters concedes that he did not include a claim of error involving the trial court's

response to jury questions in his Motion for New Trial, as is generally required in order

to preserve an issue for review on appeal. State v. Johnson, 524 S.W.3d 505, 510 (Mo.

 5
 All Rule references are to Missouri Court Rules, Volume I -- State 2018 unless otherwise noted.

 9
banc 2017); Rule 29.11(d). However, Winters argues that he preserved his claim of error

because he addressed how the trial court's responses to jury questions should affect

sentencing at his first opportunity -- during his sentencing hearing6 -- when he argued,

"this court allowed [the jury] to give their opinion and their opinion was for concurrent

time, meaning numbers they gave for these convictions, they think that an appropriate

sentence would be a ten-year sentence across the board." See Johnson, 524 S.W.3d at

510 (claim of sentencing error was "raised at the first opportunity and again at

sentencing[,]" and was therefore preserved). Furthermore, Winters asserts that even

though he failed to cite to a controlling statute, his argument nevertheless "plainly and

unequivocally informed the trial court" that it should reduce Winters's two ten-year

sentences to five-year sentences in order to effectuate the jury's recommended sentence.

See State v. Amick, 462 S.W.3d 413, 415 (Mo. banc 2015).

 Winters's reliance on State v. Johnson, 524 S.W.3d at 510, and State v. Amick, 462

S.W.3d at 415, is misplaced. First, we do not agree that Winters's sentencing hearing was

his first opportunity to claim error. In Johnson, defense counsel specifically argued -- at

the close of evidence and again at sentencing -- that the predatory sexual offender statute

did not apply to the defendant because it only applied to prior acts, and not acts which

were the basis for his current charges, and the Supreme Court found that this claim of

error was preserved because it was "raised at the first opportunity and again at

 6
 Winters's Motion for New Trial was filed on November 25, 2019, and it was denied on December 5, 2019
just prior to his sentencing hearing wherein the trial court pronounced his sentence.

 10
sentencing[.]"7 524 S.W.3d at 510. In contrast, Winters's claim of error is that the trial

court "mis-instructed" the jury that it could recommend whether Winters's sentences

would run concurrently or consecutively. The first opportunity to raise this claim of error

was at the time the trial court proposed a response to the jury's question. Winters did not

object at that time. To the contrary, Winters agreed with the trial court's proposed

response to the jury's question.

 Second, assuming, arguendo, that Winters's sentencing hearing was the first

opportunity to claim that the trial court erred in responding to the jury's question, (which

we do not find), Winters's argument during the sentencing hearing did not "plainly and

unequivocally inform[] the trial court" of its alleged error as to preserve the claim of error

for our review. Amick, 462 S.W.3d at 415. In Amick, when the trial court proposed to

substitute an alternate juror after the jury had already deliberated for several hours,

"defense counsel requested a mistrial and specifically asserted that the proposed

substitution would 'create an enormous amount of error at this point' and that 'after five

and a half or six hours of deliberation, we can't just throw somebody else into the ring.'"

462 S.W.3d at 415 (emphasis added). The Supreme Court found that although defense

counsel did not cite the specific statute upon which defendant's claim of error was based,

he nevertheless made a clear objection and included the same claim of error in his

motion for new trial. Id. Here, Winters did not make a specific objection, nor did he

 7
 Notably, the Supreme Court also found that "[the defendant] did not, however, argue the circuit court was
precluded by [section] 558.021.2 from finding him to be a predatory sexual offender because the case had already
been submitted to the jury[,]" and therefore, the defendant's claim of error on that statutory basis was not "specific
and made contemporaneously with the purported error[,]" and as such was only entitled to plain error review.
Johnson, 524 S.W.3d at 509, 513 (quoting State v. Driskill, 459 S.W.3d 412, 426 (Mo. banc 2015)).

 11
make an argument, at sentencing or otherwise, regarding the trial court's sentencing

authority under section 557.036.5. Winters never argued that the trial court was obligated

to reduce the jury's recommended sentences on Counts I and III because the trial court

committed error when it responded to the jury's question. Winters merely argued that the

trial "court could still follow through with the [jury's] hope and request for, essentially, a

ten-year sentence" as a part of his plea for lighter sentencing. [Tr. 590] (Emphasis added.)

This argument failed to "plainly and unequivocally inform[] the trial court" of Winters's

claim that the trial court only had the authority to reduce the jury's recommended

sentence of concurrent, ten-year sentences on Counts I and III to five-year, consecutive

sentences in order to effectuate the jury's recommended sentence and comply with

sections 557.036.5 and 558.026.1.8 Amick, 462 S.W.3d at 415.

 As a result, Winters's claim that the trial court exceeded its statutory authority in

imposing, in effect, a twenty-year sentence, is not preserved for our review and is subject,

at best, to plain error review. Campbell, 600 S.W.3d at 791. It follows that Winters's

second point on appeal, which alternatively claims that the trial court abused its

 8
 In Winters's reply brief, he also argues that because his Motion for New Trial was filed prior to sentencing
and the alleged error occurred at sentencing, that his claim is preserved because he "brought this issue to the court's
attention at the correct time, during the sentencing hearing." State v. Cowan, 247 S.W.3d 617, 618-19 (Mo. App.
W.D. 2008) (emphasis added), abrogated on other grounds by State v. Pierce, 548 S.W.3d 900 (Mo. banc 2018). In
Cowan, the trial court incorrectly interpreted and misstated the defendant's range of punishment pursuant to the prior
and persistent offender statute, and at sentencing, defense counsel "argued that the trial court has the authority to
impose a minimum sentence of five years because the wording of the statute does not limit the court to a ten-year
sentence." Id. at 618 (emphasis added). Winters's argument fails for the same reasons identified, supra, in
addressing Johnson and Amick. During the sentencing hearing, Winters did not raise a claim of error with the trial
court, nor did he claim that the trial court would be exceeding its authority. He merely argued that the trial could
reduce the jury's recommended sentences because of the possibility that the jury's recommended terms of sentence
contemplated that the trial court would follow its recommendation to impose concurrent sentences. Nothing in
Winters's sentencing argument, or motion for new trial, "plainly and unequivocally informed the trial court" of
Winters's position that a failure to reduce the jury's recommended ten-year sentences would constitute error. Amick,
462 S.W.3d at 415.

 12
discretion in imposing Winters's sentence, is also not preserved for our review and is

subject, at best, to plain error review. Id.

 However, even affording plain error review to Winters's points on appeal is

problematic. Where a defendant affirmatively accepts and agrees to what the trial court

proposes, any claim of error related to the trial court's action is affirmatively waived,

negating plain error review. State v. Goudeau, 85 S.W.3d 126, 128-30 (Mo. App. S.D.

2002) abrogated on other grounds by State v. Porter, 439 S.W.3d 208 (Mo. banc 2014);

see also State v. Mayes, 63 S.W.3d 615, 632 n.6 (Mo. banc 2001) ("[I]t is axiomatic that

a defendant may not take advantage of self-invited error or error of his own making."

(citation omitted)); State v. Pickens, 332 S.W.3d 303, 319 n.14 (Mo. App. E.D. 2011)

("Ordinarily, a party cannot complain on appeal about a procedure adopted in the trial

court at his or her own request, nor may an appellant complain of alleged error, which by

such person's conduct at trial, he or she joined in or acquiesced or invited." (citation

omitted)).

 In State v. Goudeau, 85 S.W.3d at 128, after several hours of deliberations, the

jury sent a question to the trial court inquiring what time it would need to return the next

day. The court proposed to answer that it did not intend for jurors to return the next day,

that the jury should continue deliberations that evening and could be provided dinner. Id.

"The court asked defense counsel if this response was appropriate, and he responded,

'Fine, Judge.'" Id. Shortly thereafter, the jury returned a guilty verdict, and on appeal,

defendant argued that the trial court's response to the jury coerced the guilty verdict. Id.

The Eastern District concluded that counsel's response constituted an "affirmative

 13
acceptance and agreement to what the trial court proposed" and therefore declined to

consider plain error review. Id. at 130.

 Here, the record reflects that the trial court specifically asked the State and

Winters, "and as far as a recommendation as far as consecutive or concurrent, I guess I'll

let them recommend whatever they wish to recommend, correct? I'll just leave it at that,

that they can recommend whatever they wish to recommend and, again, I'll be statutorily

bound by what I have the authority to do, correct?" [Tr. 570-71] (Emphasis added.)

Winters affirmatively accepted and agreed to the trial court's proposed response when he

responded, "correct." [Id.] The trial court then clarified that it was "not going to put that

in the response [to the jury,]" and Winters affirmatively responded, without objection,

"okay[.]" [Id.]

 Though Winters pointed out that the verdict forms lacked a specific space for the

jury to recommend concurrent or consecutive sentencing, that did not amount to an

objection to the trial court's proposed response to the jury's question, and is not, as

Winters contends, the opposite of an invitation supporting affirmative waiver. "[A]

defendant cannot affirmatively accept a judge's proposed action in the hope of a strategic

advantage; then, turn 180 degrees and urge an appellate court to find the trial court

plainly erred in doing that to which the defendant originally agreed." Goudeau, 85

S.W.3d at 129. Because Winters's responses to the trial court constituted an "affirmative

acceptance and agreement" to the trial court's proposed answer to the jury's question, we

would be within our authority to decline to afford Winters even plain error review of his

points on appeal. See id. at 129-30.

 14
 Even if we were to afford plain error review, however, we would not find that

Winters is entitled to relief. "Under plain error review, we must determine whether the

alleged error is 'evident, obvious, and clear error' that 'facially establishes substantial

grounds for believing that manifest injustice or a miscarriage of justice' has occurred."

Campbell, 600 S.W.3d at 788-89 (quoting State v. Ellis, 538 S.W.3d 335, 337 (Mo. App.

W.D. 2017)). "If error is found, then we must determine if the error actually resulted in a

miscarriage of justice or manifest injustice." Id. at 789.

 Here, the jury found Winters guilty of Counts I, III, and V and Winters elected to

proceed with jury sentencing pursuant to Section 557.036.3. Section 557.036 provides,

in part:

 1. Upon a finding of guilt, the court shall decide the extent or
 duration of sentence or other disposition to be imposed under all the
 circumstances, having regard to the nature and circumstances of the offense
 and the history and character of the defendant and render judgment
 accordingly.

 ....

 3. If the jury at the first stage of a trial finds the defendant guilty of
 the submitted offense, the second stage of the trial shall proceed. The issue
 at the second stage of the trial shall be the punishment to be assessed and
 declared. . . . The court shall instruct the jury as to the range of punishment
 authorized by statute for each submitted offense. . . . The jury shall assess
 and declare the punishment as authorized by statute.

 ....

 5. If the jury returns a verdict of guilty in the first stage and declares
 a term of imprisonment in the second stage, the court shall proceed as
 provided in subsection 1 of this section except that any term of
 imprisonment imposed cannot exceed the term declared by the jury unless
 the term declared by the jury is less than the authorized lowest term for the

 15
 offense, in which event the court cannot impose a term of imprisonment
 greater than the lowest term provided for the offense.

(Emphasis added.) Though a trial court's imposed sentence on a particular count cannot

exceed the term of sentence for that count declared by the jury, "[a] trial court has

discretion to determine if sentences should run concurrently or consecutively." State v.

Williamson, 836 S.W.2d 490, 500 (Mo. App. E.D. 1992).

 Pursuant to section 557.036.3, the trial court instructed the jury that Counts I and

III were both punishable by a minimum of five years in prison, but up to life in prison,

and that Count V was subject to a minimum of five years in prison and a maximum of

fifteen years in prison. Winters asked the jury to impose the minimum sentences on all

three counts and argued that "[i]t's up to the court whether they are run concurrent or

consecutive. They will probably be consecutive. If you give him the minimum sentence,

he'll get a fifteen-year sentence, most likely." [Tr. 563-64] (Emphasis added.)

 During deliberations, the jury asked whether the trial court could "USE

DISCRETION AND CHANGE THE RECOMMENDED SENTENCE THE JURY

AGREES TO?" [L.F. Doc. 6, p. 7] After consulting with both Winters and the State, the

trial court responded: "THE COURT CANNOT INCREASE THE SENTENCE. THE

COURT MAY DECREASE THE SENTENCE, BUT THE COURT MUST STAY

WITHIN THE STATUTORY RANGE OF PUNISHMENT." [Id.] On the same page,

the jury asked, "CAN THE JURY RECOMMEND THE SENTENCES ARE

CONSECUTIVE OR CONCURRENT?" [Id.] After consulting with both Winters and

 16
the State, the trial court responded: "THE JURY MAY RECOMMEND WHETHER

THE SENTENCES ARE CONSECUTIVE OR CONCURRENT." [Id.]

 The jury then recommended a term of imprisonment of ten years on both Counts I

and III, and recommended a sentence of five years on Count V. At the bottom of each

verdict form in a blank area on the page, the foreperson wrote, "THE JURY

RECOMMENDS THE SENTENCES RUN CONCURRENTLY WITH [THE OTHER

TWO COUNTS]." [L.F. Doc. 7, pp. 6-8]

 Winters acknowledges that pursuant to section 558.026.1, the trial court was

bound to run the sentences for Counts I and III consecutively. However, he argues that

because the trial court "mis-instructed"9 the jury that it could recommend that Winters's

sentences run concurrently, while also informing the jury that the trial court could not

increase the jury's recommended terms of sentence on each count, that the trial court was

required to reduce the jury's recommended ten-year sentences for Counts I and III to five

years so that the total term of imprisonment would not exceed the jury's recommendation

 9
 Winters acknowledges that a jury's recommendation that sentences run concurrently is purely advisory and
not binding on a trial court. Williamson, 836 S.W.2d at 500; State v. Archer, 406 S.W.2d 563, 566 (Mo. 1966).
However, Winters argues that this case is different, because the trial court "affirmatively mis-instructed the [jury]
that [it] could recommend concurrent over consecutive sentences" and he relies on State v. Atkeson, 255 S.W.3d 8,
11-12 (Mo. App. S.D. 2008), to support his position that it was error for the trial court to inform the jury that it could
make this type of recommendation. [Appellant's Brief, p. 25] We disagree. Atkeson is not analogous to the present
situation because the jury in that case asked whether the sentences would run concurrently or consecutively and the
trial court declined to answer. 255 S.W.3d at 11. Atkeson argued that because the trial court refused to answer the
question, "the jury believed it had no choice but to give Defendant longer sentences in order to prevent her from
serving only a short amount of time." Id. In holding that the trial court properly instructed the jury as required by
section 557.036, the Southern District stated, "an error would have occurred if the trial judge had answered the jury's
question." Id. The jury's question here was not whether the sentences would run concurrently or consecutively, as
was the question in Atkeson. The jury's inquiry was whether it could make a recommendation as to whether the
sentences should run concurrently or consecutively.
 Winters also argues that his situation differs because the juries in Archer, 406 S.W.2d at 565, and
Williamson, 836 S.W.2d at 500, recognized that "the sentences they recommended could be ordered to run
consecutively instead in their recommendations." [Appellant's Brief, p. 25] We discuss further, infra, why we do
not agree with the proposition that the jury recommended that Winters's sentences run concurrently with the notion
that its recommendation of concurrent sentences would be binding on the trial court.

 17
of a ten-year sentence. Winters contends that "the trial court's imposition of a total term

of imprisonment double that declared by the jury [ ] rises to the level of plain error"

because "'[b]eing sentenced to a punishment greater than the maximum sentence for an

offense constitutes plain error resulting in manifest injustice.'" [Appellant's Brief, p. 18

(quoting Severe, 307 S.W.3d at 642)]

 Winters's argument improperly conflates the jury's unrelated questions, and

improperly presumes a causal relationship between the jury's recommended sentence

terms on each count, and its recommendation that all sentences run concurrently. The

jury's question concerning whether recommended sentences imposed on each count could

be altered by the trial court specifically inquired about the extent of the trial court's

authority to alter the jury's recommendation. The question was limited to the subject of

the number of years that could be recommended by the jury as a sentence for each count.

This is supported by the fact that the jury was instructed on the statutory range of

punishment for each submitted offense, as required by section 557.036.3, and by the fact

that each verdict form was distinct and required that the jury to "assess and declare the

punishment for" Count I, Count III, and Count V, separately. [L.F. Doc. 7, pp. 6-8] In

response to this discrete question, the trial court informed the jury that its authority to

alter the jury's recommended sentences was limited to decreasing the sentence imposed

on each count, provided the sentence remained within the statutory range of punishment

for the offense.

 The jury's second question about concurrent or consecutive sentencing did not

address the trial court's authority. In fact, the jury had already been told by Winters's

 18
counsel that "[i]t's up to the court whether they are run concurrent or consecutive. They

will probably be consecutive." [Tr. 563-64] Instead, all the jury asked was whether it

was permitted to make a recommendation about whether sentences would run concurrent

or consecutive. The nature of the question, juxtaposed against the jury's first question,

and Winters's clear statement to the jury, make it clear that the jury simply sought an

opportunity to express an opinion, without any expectation that the opinion would be

binding on the trial court.10 As such, there is no basis to conclude that the jury

recommended ten-year sentences on Counts I and III believing they would be

concurrently served. See State v. Shinn, 420 S.W.3d 619, 631-32 (Mo. App. S.D. 2013)

(Appellant argued that the trial court erred when it informed the jury, in response to a

jury question during deliberations, that defendant would be required to serve eighty-five

percent of the jury's recommended sentence. Appellant could not establish plain error

because "Defendant has failed to prove his causation claim. As the State correctly notes,

Defendant merely speculates that the jury reached its recommended sentence 'simply

because it was informed of the 85% rule.'"). At no point did the trial court, the State, or

Winters inform, or suggest to, the jury that it would be the final arbiter of whether

Winters's sentences ran concurrently or consecutively. Cf. State v. Davis, 474 S.W.3d

179, 194-95, n.5 (Mo. App. E.D. 2015) (At trial, the prosecutor argued that while it was

the trial court's decision whether the sentences would run concurrently or consecutively,

 10
 We note that the jury did not include its concurrent sentencing recommendation in the allocated space of
the verdict form where it was instructed to "assess and declare the punishment" for each offense. [L.F. Doc. 7, pp.
6-8] Instead, the jury inserted the recommendation, separately, at the bottom of the verdict form, suggesting that it
did not believe that its concurrent sentencing recommendation would be binding on the trial court in the same
manner that its declared term of years as to each offense was binding on the trial court.

 19
they would "most likely [be] concurrent" and so on appeal, appellant contended that the

trial court erred in sentencing him to consecutive sentences amounting to more than

fifteen years because his sentence was "'capped' at the lengthiest individual sentence

imposed by the jury," pursuant to section 557.036.5, after the jury was "misled" by the

prosecutor's argument. The Eastern District found that there was no plain error where the

record was clear as to the trial court's authority and discretion as to imposing concurrent

or consecutive sentences).

 Although the jury gave its recommendation for concurrent sentences, the trial

court was permitted to ignore this recommendation as "mere surplusage." State v. Lynch,

659 S.W.2d 618, 619 (Mo. App. E.D. 1983) ("the trial court . . . would have been

justified in ignoring the jury's recommendation that the sentences run concurrently.").

We need not address whether the trial court erred in responding to the jury's question

about making a recommendation about concurrent or consecutive service of sentences

because the trial court's response to the question did not result in a miscarriage of justice

or manifest injustice.

 Points One and Two are denied.

 Conclusion

The trial court's judgment of conviction and sentence is affirmed.

 __________________________________
 Cynthia L. Martin, Judge

All concur

 20